JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant William Jones ("Jones") appeals his convictions for gross sexual imposition and rape. We find no merit to this appeal and affirm.
 {¶ 2} In January 2003, Jones was indicted on five counts of gross sexual imposition and three counts of rape, with sexual violent predator specifications attached to each count. The indictment alleged that the offenses occurred between January 1999 and May 2001, involving a female victim, between five and six years old.
 {¶ 3} Prior to trial, Jones moved to suppress oral statements he made to Scott Kennedy, a social worker at Cuyahoga County Department of Children and Family Services ("CCDCFS").[1]
Jones contended that he should have received Miranda warnings prior to speaking with Kennedy because the interview was part of a joint investigation with the police.
 {¶ 4} At the suppression hearing, Kennedy testified that he was a CCDCFS intake sexual abuse worker assigned the victim's case. He further explained that he was required to contact an alleged perpetrator and schedule an interview whenever there was a report of abuse. Because Jones failed to respond to the letter requesting that he contact CCDCFS, Kennedy asked Cleveland police detectives Karl Lessmann and Christiana Cottom to accompany him to Jones' apartment. At the apartment, Kennedy and Det. Lessmann knocked on the door and identified themselves. Both Kennedy and Det. Lessmann testified that Jones was cooperative and that he agreed to go to CCDCFS' office to answer questions concerning the alleged abuse. Because Jones did not have a driver's license, he accepted Det. Lessmann's offer to drive him in an unmarked police vehicle.
 {¶ 5} Kennedy further testified that even after he told Jones that he would share his findings with the police, Jones agreed to answer his questions. Kennedy indicated that the interview was conducted in a private office with no one else present and that it lasted less than an hour. He further stated that Detective Lessmann did not speak with Jones until after Kennedy left the room and informed him of Jones' confession.
 {¶ 6} Detectives Lessmann and Cottom corroborated Kennedy's testimony. Both testified that Jones voluntarily rode in the unmarked police vehicle and that he agreed to cooperate. In contrast, Jones testified that he accompanied Kennedy and the detectives because they threatened to call in a "black and white" police car to escort him if he refused.
 {¶ 7} Finding that Jones was never actually in "custody" at the time of his interview with Kennedy, the trial court denied the motion and the case proceeded to a jury trial where the following evidence was presented.
 {¶ 8} On May 25, 2001, Jones babysat the victim and her brother after school and then dropped them off at the victim's paternal grandmother's house. The paternal grandmother testified that based on the victim's unusual behavior when she arrived, and, further, based on what the victim told her, she called CCDCFS and reported the allegations of sexual abuse. She later confronted the victim's mother and accused her of knowing about the abuse. The victim's mother admitted that she learned of the allegations a few days earlier from her mother but, because she was "scared" of a criminal trial and the possibility of losing her children, she made no call to police or CCDCFS. The victim's maternal grandmother corroborated the mother's testimony and stated that she told her daughter to take the victim to the hospital.
 {¶ 9} The victim's mother testified that she had known Jones for approximately six or seven years. She stated that he was a good friend who had helped care for her five children by babysitting, providing rides to school and medical appointments, and giving her food and money. She further acknowledged that the victim and her siblings would often spend the night at his house.
 {¶ 10} At trial, the now 8-year-old victim testified that she knew Jones as a family friend. She indicated that she had spent the night at his house with her siblings, and, on some occasions, Jones forced her to sleep in his room, where he sexually abused her. She described the sexual incidents stating: "He pulled my pants down and put his stuff * * * in my stuff." The victim elaborated by indicating that, on four separate occasions, Jones put his penis in her vagina. She also stated that he licked her vaginal area and that he placed his hands on her vagina. The victim further testified that, despite her efforts to break free, Jones would restrain her with his hands and he threatened to harm her mother if she told anyone about the incidents.
 {¶ 11} The victim's cousin also testified. He stated that he was in sixth grade and that he had spent the night at Jones' house in the past. One night, when he was ten years old, he was awakened by a thunderstorm and went upstairs to use the bathroom. When he was outside Jones' bedroom, he peeked through the open door and saw the victim sucking Jones' penis. On cross-examination of the victim, however, she denied that this incident ever occurred.
 {¶ 12} Elizabeth Krystosik, a caseworker at CCDCFS, testified that she first responded to the call made to the CCDCFS child abuse hotline. She met with the victim and her family to develop a "safety plan" for the immediate well-being of the victim and, afterwards, she referred the matter to Scott Kennedy.
 {¶ 13} Kennedy testified that he interviewed the victim and her family in response to the allegations. In his interviews of more than 1,000 children in sexual abuse cases, he found that it was common for child victims to refrain from disclosing the entire scope of the abuse during their initial interviews. He further stated that establishing rapport and trust is critical for full disclosure.
 {¶ 14} Kennedy also reiterated his testimony from the suppression hearing and explained that he interviewed Jones concerning the initial allegations on May 30, 2001. He further testified that although Jones initially denied the accusations, Jones ultimately admitted to "touching" the victim. At first, Jones accounted for the touching as incidental to drying off the victim after a bath. Upon further questioning, he admitted to more of the allegations, conceding that he would put his hands inside her pants and underwear and fondle her. Jones said this happened three or four times when the victim slept at his house. When Kennedy told Jones the allegations made by the victim's cousin, Jones denied that he ever engaged in oral sex. Finally, Jones expressed a strong desire to get help.
 {¶ 15} On May 29, 2001, the mother and paternal grandmother took the victim to the hospital for an evaluation. Kristin Kozak, a social worker for University Hospitals, testified that she met with the victim prior to her examination by the emergency room pediatrician. She testified that her responsibilities include interviewing the patient and the patient's family and relaying her findings to the medical staff prior to the patient's physical examination. Kozak also acknowledged that her interviews in abuse cases are an integral part of the medical examination.
 {¶ 16} In regard to statements made by the victim, Kozak testified that the victim told her that Jones had touched her vaginal area. Specifically, she explained that when she asked the victim where Jones had touched her, the victim became upset and teary-eyed and pointed to her vaginal area. On redirect, Kozak further testified that the victim told her paternal grandmother that Jones "had touched [her] stuff."
 {¶ 17} The emergency room physician, Dr. Ethan Leonard, ultimately diagnosed the victim with "alleged sexual abuse." He explained that the absence of physical evidence did not negate the possibility of sexual abuse. He stated that if the abuse consisted of manual or oral contact of the vagina, there would typically be no physical evidence. He further indicated that the healing process is accelerated in younger children and, thus, the existence of physical evidence would depend on the date of the last incident.
 {¶ 18} Finally, the State offered testimony from Detectives Lessmann and Cottom regarding Jones' confession. Following Kennedy's interview, Det. Lessmann and Det. Cottom advised Jones of his Miranda rights and questioned him. Jones admitted that he had fondled the victim's vaginal area on May 24, 2001. He told police that, while lying next to the victim on his living room floor in front of the television, he placed his hand "down her pants and started playin' with her vagina." He explained that he was "rubbing" the victim's vaginal area "skin to skin" and that he also "touched" her on one other occasion. He further admitted that there were three other incidents of his touching the victim but claimed the incidents were different because they were in the context of drying off the victim after a bath. Finally, Jones expressed his desire to get help for what he described as his "demons." Det. Lessmann then compiled a three-page written statement of this confession, which Jones signed.
 {¶ 19} At the close of the State's case, Jones moved for an acquittal. After the State withdrew one count of gross sexual imposition, the trial court denied his motion. The jury found Jones guilty of the remaining four counts of gross sexual imposition and two of the three counts of rape.
 {¶ 20} At sentencing, Jones stipulated to a sexual predator classification in exchange for the State's dismissal of the sexually violent predator specifications. The court imposed a four-year prison term on each count of gross sexual imposition, to run consecutively. Jones was also sentenced to life imprisonment on the two counts of rape, to run concurrently with his sentence for gross sexual imposition.
 {¶ 21} Jones appeals, raising five assignments of error, which we will address together and out of order where appropriate.
 a. Ineffective Assistance of Counsel {¶ 22} In his first assignment of error, Jones contends that he was deprived of his right to the effective assistance of counsel. He claims that his trial counsel was ineffective because counsel refused to communicate with him and failed to object to certain hearsay and character testimony. Similarly, Jones argues in his fourth and fifth assignments of error that the trial court's admission of the hearsay and character evidence constitutes plain error.
 {¶ 23} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; Statev. Lytle (1976), 48 Ohio St.2d 391, vacated on other grounds (1978), 438 U.S. 910; and Strickland v. Washington (1984),466 U.S. 668. Hence, to determine whether counsel was ineffective, Jones must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, supra, at 687.
 {¶ 24} In Ohio, a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester
(1976), 45 Ohio St.2d 71, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle
(1976), 48 Ohio St.2d 391, 396, and State v. Calhoun (1999),86 Ohio St.3d 279, 289. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at paragraph three of the syllabus, and Strickland, supra, at 686.
 {¶ 25} Jones' argument that his counsel refused to communicate with him, inform him of the trial dates, or provide him with requested documentation lacks merit. There is no support in the record for Jones' assertions. In fact, Jones' complaints of trial counsel failing to provide him with documentation or informing him of dates related to his first trial counsel, who was subsequently replaced. Further, Jones' own statements to the court contradict his claim that his trial counsel failed to communicate with him. Specifically, prior to trial, he complained to the court that his counsel's way of communicating, i.e., discussing possible plea bargains, indicated that he did not think Jones was innocent. Although Jones may not have agreed with his trial counsel, we fail to see how his trial counsel was deficient.
 {¶ 26} Jones also argues that his counsel's performance was deficient because he failed to object to the testimony of (1) Kristin Kozak, social worker at University Hospital, (2) Elizabeth Krystosik, CCDCFS case worker, and (3) the victim's mother. He contends that their testimony concerning the victim's statements of sexual abuse constituted inadmissible hearsay.
 {¶ 27} Initially, we note that Jones has failed to identify those portions of the record where he claims the State elicited improper hearsay testimony requiring an objection by his trial counsel. Although he has failed to comply with App.R. 16(A)(7), we nonetheless address his argument to the extent we are able to glean from the record the applicable testimony.
 {¶ 28} In regard to Kozak's testimony, we find that the testimony was properly admitted pursuant to Evid.R. 803(4), the "medical treatment" exception to the hearsay rule, and, therefore, Jones' counsel was not deficient for failing to object. See State v. Rice, Cuyahoga App. No. 82547, 2003-Ohio-6947 (recognizing that a social worker's testimony regarding the victim's statements of sexual abuse was admissible under Evid.R. 803(4)). Here, prior to Kozak testifying about the victim's statements, the State properly laid a foundation that Kozak was acting as part of a medical team when taking the victim's statements and that her interview was an integral part of the medical examination. Further, the record reflects that the victim's statements to Kozak were essential to the doctor's ultimate diagnosis of "alleged sex abuse." Because Evid.R. 803(4) allows a witness to testify as to those statements made for the purpose of medical diagnosis, we find that this testimony was properly admitted. See, e.g., State v. Rusnak, Cuyahoga App. No. 80011, 2002-Ohio-2143; State v. Chappell (1994),97 Ohio App.3d 515; State v. Jones (Dec. 23, 1999), Cuyahoga App. No. 75390.
 {¶ 29} Jones next challenges the testimony of Elizabeth Krystosik pertaining to the victim's statement of abuse. Our review of the record reveals that Krystosik testified from her notes regarding the victim's statement, as follows:
{¶ 30} "She stated: `I was sleeping on the living room floorwith my other siblings while I was in Mr. William Jones' home.One night he came and laid next to me. He came close to me andput his hand down my pants and touched my stuff.'"
 {¶ 31} Contrary to the State's assertion, defense counsel never objected to this testimony. Further, the victim's statement was not given to Krystosik for purposes of medical treatment, but, rather, while Krystosik was developing a "safety plan." However, even though this testimony constituted inadmissible hearsay, we find that it was a tactical decision of defense counsel not to object. This testimony assisted Jones' defense by demonstrating that the victim never initially reported any incidents of Jones licking her vagina. Further, we cannot say to a reasonable degree of probability that absent this testimony, the outcome of the trial would have changed, especially since Jones admitted to committing the act to which Krystosik testified, i.e., touching the victim in her vaginal area while she was lying on the floor.
 {¶ 32} Next, Jones argues that his trial counsel failed to object to the hearsay testimony of the victim's mother concerning statements made by the victim. However, we fail to find any instances of the mother testifying as to the victim's statements and, thus, we find no merit to this argument.
 {¶ 33} Finally, Jones argues that his counsel was deficient for failing to object to the character evidence offered by the State through the testimony of the victim's mother. He contends that the State improperly elicited testimony concerning his alleged prior act of "touching" another child. In response, the State counters that the testimony was not offered for the truth of the matter asserted but, rather, only to explain why the mother made a police report after Jones denied touching her daughter. The State further claims that it made no attempt to use the statement to prove the allegations against Jones.
 {¶ 34} Evid.R. 404 prohibits the introduction of evidence of a defendant's prior bad acts for the purpose of proving the defendant's character and that he acted in conformity therewith. Although we find that the State improperly elicited testimony regarding Jones' prior bad act, and that defense counsel should have objected to such testimony, we find no prejudicial error. Jones offers no support for his broad assertion that the outcome of the trial would have been different if defense counsel had objected. At best, this testimony only reiterated Jones' own admissions of his propensity for "touching" children. Thus, because this evidence was cumulative and there was overwhelming evidence of Jones' guilt, we find that defense counsel's failure to object did not rise to the level of ineffective assistance of counsel.
 {¶ 35} Furthermore, having found that the outcome of the trial would not have changed if the hearsay and character testimony were excluded, we find no plain error in the trial court's allowance of such testimony. See State v. Joseph,73 Ohio St.3d 450, 1995-Ohio-288 ("Plain error does not exist unless, but for the error, the outcome at trial would have been different.").
 {¶ 36} Accordingly, Jones' first, fourth, and fifth assignments of error are overruled.
 Motion to Suppress {¶ 37} Jones argues in his second assignment of error that the trial court erroneously denied his motion to suppress. Jones contends that social worker Scott Kennedy should have givenMiranda warnings because he was working with the police.
 {¶ 38} In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988),38 Ohio St.3d 275, 277; State v. Fanning (1982), 1 Ohio St.3d 19, 20. As a result, a reviewing court is bound to accept the trial court's factual findings if they are supported by competent, credible evidence. See State v. Curry (1994),95 Ohio App.3d 93, 96, citing State v. Schiebel (1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether the trial court properly applied the substantive law to the facts of the case. State v.Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 39} The warnings set out in Miranda v. Arizona (1966),384 U.S. 436, are required only when a suspect is subjected to custodial interrogation. When determining whether an individual is in custody for purposes of Miranda, it must be determined whether there was either a formal arrest or a restraint of an individual's freedom of movement commensurate with that of a formal arrest. Id. Further, the only relevant inquiry in determining whether an interrogation is custodial is how a reasonable person in the suspect's situation would have understood the situation. Berkemer v. McCarty (1984),468 U.S. 420, 442.
 {¶ 40} Generally, social workers have no duty to provideMiranda warnings because they are private individuals without the authority to arrest. See State v. Dobies (Dec. 18, 1992), Lake App. No. 91-L-123; State v. Simpson (Feb. 21, 1992), Ross App. No. 1706. However, we recognize that in certain circumstances a social worker may be required to provideMiranda warnings, i.e., when acting as an agent of the police. See State v. Evans (2001), 144 Ohio App.3d 539, citing Statev. Watson (1971), 28 Ohio St.2d 15, 26. Nevertheless, the ultimate determination depends on whether the suspect was in custody at the time of the interrogation.
 {¶ 41} Here, the evidence revealed that Jones voluntarily accompanied Kennedy and the detectives to the CCDCFS office and agreed to answer questions regarding the allegations of sexual abuse. See Oregon v. Mathiason (1977), 429 U.S. 492 (holding that defendant was not in custody if he voluntarily appeared for questioning and was free to leave afterward). See, also, City ofEuclid v. Meyers (Mar. 15, 2001), Cuyahoga App. No. 77932. Relying on the testimony of three witnesses at the suppression hearing, the trial court expressly rejected Jones' self-serving claim that he accompanied the detectives and Kennedy out of "fear." Further, throughout the entire interview, Jones and Kennedy were the only ones present. We find that under these circumstances, a reasonable person would not have felt restrained or confined. Thus, because Jones was not in custody while speaking with Kennedy, we find that Miranda warnings were not required.
 {¶ 42} Accordingly, we overrule his second assignment of error.
 Manifest Weight of the Evidence {¶ 43} In his third assignment of error, Jones argues that his convictions are against the manifest weight of the evidence.
 {¶ 44} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
{¶ 45} "Weight of the evidence concerns `the inclination ofthe greater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 {¶ 46} The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id. at 387.
 {¶ 47} Jones essentially argues that the jury "lost its way" because the testimony of the victim and her cousin was not credible. However, the jury was in the best position to weigh the credibility of the witnesses and resolve any inconsistencies. The fact that the victim did not fully disclose all of the incidents of sexual abuse during her initial interviews with CCDCFS or the hospital social worker does not render her testimony totally unreliable. To the contrary, there was expert testimony suggesting that, given the dramatic and sensitive nature of sexual abuse, it is quite common for child victims to initially withhold many of the facts.
 {¶ 48} Likewise, we find no evidence demonstrating that the victim's cousin's testimony was wholly unreliable. Despite defense counsel's extensive cross-examination, the witness consistently testified to what he observed. To the extent that the jury believed the victim or her cousin, we cannot say that it clearly lost its way. Moreover, Jones' confession to Kennedy and the detectives proved his guilt on the gross sexual imposition charges.
 {¶ 49} Accordingly, Jones' third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J. and Kilbane, J. concur.
[1] Although Jones also moved to suppress his written confession given to police, he does not challenge that part of the trial court's decision on appeal.