OPINION
{¶ 1} Plaintiff-appellant, State of Ohio ("plaintiff"), appeals from an order granting in part a motion to suppress statements made by defendant-appellee, Ronald Thoman ("defendant") to a Franklin County Children Services caseworker. Plaintiff asserts the following assignment or error:
The trial court erred when it granted defendant's motion to suppress where no custodial interrogation occurred.
 {¶ 2} On September 4, 2003, defendant was interviewed by Martha Lambert, a Franklin County Children Services ("FCCS") caseworker. Lambert was the intake investigator assigned to investigate the alleged sexual abuse of defendant's stepson by his stepfather, the defendant. In an effort to talk with defendant's stepson, Lambert appeared at the Thoman home. Because the family was in the process of leaving, Lambert was not able to interview defendant's stepson, but did speak briefly with Nancy Thoman, the defendant's wife. At that time, Nancy Thoman signed a safety plan that allowed defendant to visit his biological children. Because the defendant was not there, Lambert asked Nancy Thoman to have defendant call Lambert to set up a meeting for purposes of signing the safety plan. Defendant called Lambert and agreed to meet Lambert at the FCCS offices.
 {¶ 3} Upon arriving at FCCS, defendant checked in with the receptionist. After waiting approximately five minutes, Lambert came to the lobby, escorted defendant through a locked door, and down a hallway to an interview room. Lambert read the safety plan, which provided for supervised visitation with defendant's children, and defendant signed the safety plan. Defendant stood up to leave and Lambert asked him to sit down, and asked him if she could ask him a few questions.[1] Lambert did not ask defendant any specific questions regarding the alleged sexual abuse, but did read the allegations to defendant to see if defendant wanted to say anything. Thereafter, defendant made incriminating statements to Lambert. No law enforcement officers were present during Lambert's meeting with defendant, and Lambert did not have any arrest powers. Defendant testified that while Lambert was wearing an identification card, she was not wearing a badge, a gun, or handcuffs. Defendant was not frisked, arrested, or threatened with arrest. At no time was defendant informed of his Miranda rights. After the meeting, Lambert escorted defendant to the lobby and defendant left.
 {¶ 4} Defendant filed a motion to suppress all "statement[s] made by the defendant during the interrogation by the agent of the Franklin County Children's Services" because such statements were obtained during a custodial interrogation in violation of defendant's constitutional rights. (Sept. 14, 2004, Motion to Suppress Statements at 4.) In response, the state argued that defendant was not in custody, and therefore, Miranda warnings were not required. The trial court held a hearing on May 21, 2004. By decision and entry the trial court granted in part defendant's motion to suppress statements.
 {¶ 5} As we held in State v. Robertson,
Franklin App. No. 03AP-277, 2004-Ohio-556, at ¶ 5:
There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; and State v.Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v.Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App. 3d 93, 641 N.E.2d 1172; and State v. Claytor (1993),85 Ohio App.3d 623, 620 N.E.2d 906.
 {¶ 6} The warnings set out in Miranda v. Arizona (1966), 384 U.S. 436,86 S. Ct. 1602, are required only when a suspect is subjected to custodial interrogation. In Miranda, the court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. "A person is considered in custody for purposes of Miranda when he is placed under formal arrest or his freedom of action is restrained to a degree associated with a formal arrest."State v. Simpson, Franklin App. No. 01AP-757, 2002-Ohio-3717, at ¶ 33, citing Minnesota v. Murphy (1984), 465 U.S. 420, 434, 104 S. Ct. 1136. "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" State v. Gumm
(1995), 73 Ohio St.3d 413, 429, quoting United States v. Mendenhall
(1980), 446 U.S. 544, 554, 100 S. Ct. 1870.
 {¶ 7} Generally, social workers have no duty to provide Miranda
warnings because they are private individuals without the power to arrest. See Columbus v. Gibson (Dec. 15, 1992), Franklin App. No. 92AP-570. In Gibson, the defendant, Willard Wilson Gibson, Jr. ("Gibson") was charged with discharging a firearm in violation of Columbus City Code 2323.03. Clay Layton ("Layton"), Gibson's stepson, had been removed from Gibson's home and placed by FCCS in the home of Carolyn Aaron. Suzanne Leslie ("Leslie") was a social worker for FCCS assigned to Layton's case. Layton called Leslie and indicated that Gibson had been outside the house where Layton was living and that Gibson shot four shots into the air. Because of Leslie's obligation to investigate Layton's report, Leslie called Gibson. Gibson returned Leslie's phone call and Leslie asked Gibson of his version of what happened. Gibson then made statements to Leslie that were used against him at trial. Leslie testified that she did not threaten to take action against Gibson and that all she had done was ask Gibson for his version of what happened. Gibson testified that he felt obligated to tell Leslie what happened because he did not want to jeopardize his visits with the children.
 {¶ 8} On appeal, Gibson argued that the trial court erred in not suppressing the statements made by Gibson to Leslie. This court held that Leslie was not a law enforcement officer as contemplated by Miranda, and that even if she was a law enforcement official, Miranda warnings were only required if the suspect was in custody. Because Gibson initiated the conversation by voluntarily returning Leslie's phone call, Gibson was not under arrest or otherwise deprived of his freedom, and Gibson was free to terminate the conversation with Leslie at any time, we held that the conversation between Leslie and Gibson was not a custodial interrogation requiring the giving of Miranda warnings. See, also, State v. Jones,
Cuyahoga App. No. 83481, 2004-Ohio-5205 (holding that the defendant was not in custody when he made statements to his caseworker and the police at the county agency's office); State v. Simpson (Feb. 21, 1992), Ross App. No. 1706 (holding that defendant was not in custody when statements were made to a social worker); State v. Combs (Mar. 19, 1990), Brown App. No. CA89-06-008 (holding that statements made to caseworker were not obtained through a custodial interrogation; therefore, Miranda warnings were not required); State v. Malterer (June 21, 1989), Tuscarawas App. No. 88AP110095 (holding that defendant was not in custody when he made statements to his counselor); State v. Ferrette (1985), 18 Ohio St.3d 106
(holding that security officers that questioned defendant did not have authority to arrest, thus the defendant was not in custody and Miranda
warnings were not required); State v. Taylor (June 23, 1987), Mahoning App. No. 86-CA-14 (holding that defendant was not in custody when statements were made to the caseworker assigned to his case).
 {¶ 9} "A law enforcement officer is considered to be someone who has a statutory duty to enforce the laws of Ohio and who is vested by statute with the power to arrest." Gibson, supra at *8. Lambert, on the other hand, is an intake investigator at FCCS whose duty is to investigate allegations of abuse and neglect, and make determinations about how to intervene in the family. The purpose of her investigation is to "determine the risk to children and to make an intervention that assures the safety of the children." (Tr. 8.) Lambert did call the police department prior to interviewing defendant to find out who the investigator was going to be because she is required to send any abuse referrals to the local law enforcement agency. See R.C. 2151.421(A)(1). However, the court finds that this fact is not material, as Lambert did not have a discussion with that person prior to talking to defendant, and was not acting under police direction. Lambert testified that she is required to interview the victim, the alleged perpetrator, and other persons that may be involved or have information regarding the alleged abuse. And, while she usually interviews the victim prior to interviewing the alleged perpetrator, that is not always the case. In this case, for the sake of expediency, she decided to inquire about the sexual abuse allegations prior to interviewing the victim because the alleged perpetrator was already there. Lambert read the allegations to defendant and asked if he wanted to comment on them. He did.
 {¶ 10} Like the FCCS social worker in Gibson, Lambert was not a law enforcement officer as contemplated in Miranda, as she neither had the authority to enforce the laws of Ohio nor the power to arrest. Lambert's position at FCCS does not, in itself, render her an agent of the police department, and she has no statutory obligation to make reports to the police, except as required by R.C. 2151.421(A)(1).
 {¶ 11} Furthermore, while there may be specific instances where a social worker may be required to provide Miranda warnings, i.e., when acting as an agent of the police department, the ultimate inquiry depends on whether the suspect was in custody at the time of the interrogation. See Jones, supra. Thus, even if this court were to concede that Lambert was a law enforcement official, Miranda warnings need only to be given to those individuals in custody, and not to those who voluntarily make statements regardless of custody. See Miranda, supra. The determination of whether or not the defendant was in custody does not depend on the defendant's subjective belief about the interrogation, but how a reasonable person would have understood the situation given the totality of the circumstances. Berkemer v. McCarty (1984), 468 U.S. 420,104 S. Ct. 3138.
 {¶ 12} The trial court here concluded that the "physical surroundings of the questioning, the threats to separate Defendant indefinitely from his children, and the orders not to leave the closed facility were severe enough for a reasonable person in the suspect's situation to have believed that his freedom of action was curtailed to the `degree associated with a formal arrest.'" (July 28, 2004, Decision and Entry at 3.) However, this court finds that the evidence does not support that conclusion.
 {¶ 13} In the case sub judice, the interview was conducted in the FCCS offices. The interview room used was a standard room, and defendant was not secured in the room in any way. Defendant was not instructed that he was not allowed to leave the premises, nor is there any evidence that he was threatened or intimidated in any way. Defendant was aware that Lambert was not a law enforcement officer, and that she was the investigator for FCCS assigned to his case. Lambert was not wearing a badge, a gun, or handcuffs. Defendant was neither arrested, nor threatened with arrest, and was free to leave. There were no law enforcement officers present at the interview, and the interview was not taped. Any argument that defendant felt threatened by Lambert seems dubious at best, since defendant had already signed the visitation plan providing for supervised visitation with his children prior to any inquiry about the alleged sexual abuse.
 {¶ 14} Additionally, the fact that Lambert changed her usual sequence of investigation in this case does not turn this interview into a custodial interrogation. As discussed previously, Lambert's goal as an FCCS caseworker is to assess the risk of the child. As a caseworker, Lambert is required to interview the victim, the alleged perpetrator, and other persons that may be involved, or have information regarding the alleged abuse. Lambert testified that she prefers to talk to the victim prior to interviewing the alleged perpetrator, but that there is no policy that requires such sequence. Lambert stated that it was "not unusual for [her] to give allegations to an alleged perpetrator in advance of talking to the victim, but [she] prefer[s] to do it the other way." (Tr. 29.) Lambert testified that she interviewed defendant prior to interviewing defendant's stepson for expediency because defendant was already in her office. We do not find the sequence of interviews to be material to the issue in this case, other than to establish a reason why Lambert was not expecting to ask defendant if he wished to comment on the allegations. The fact that defendant may not have "expected" to be asked about the sexual abuse allegations does not transpose the inquiry into something custodial or involuntary. There is no evidence that Lambert interrogated defendant or ordered defendant to answer a series of questions. As stated earlier, Lambert read the allegations to defendant and asked if he wanted to comment on them. He did. Whether or not defendant personally felt compelled to discuss the allegations with Lambert is not relevant to the court's inquiry, which is whether or not a reasonable person would have believed he was not free to leave. See Gumm, supra.
 {¶ 15} Based on the totality of the circumstances, we here make an independent determination that the facts do not meet the appropriate legal standard of being a custodial interrogation. See, also, State v.Abrevaya (Feb. 20, 1998), Montgomery App. No. 16581 (holding that the defendant was not in custody when statements were made while the defendant was in the hospital); State v. Smith (May 10, 1996), Miami App. No. 95-CA-17 (holding that a defendant who was hospitalized after a gunshot wound was not in custody when police came to his room and questioned him about his wife's murder); State v. Uhler (May 13, 1992), Wayne App. No. 2683 (holding that an interview at Children's Services with a caseworker and a police officer was not a custodial interview requiring the giving of Miranda warnings); State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279 (holding that even though the interview room at the hospital was closed, and not locked, the defendant was not in custody when he was interviewed by police, a social worker and a Children's Services representative).
 {¶ 16} Because we find that defendant was not in custody while speaking with Lambert, there was no custodial interrogation. Therefore, the giving of Miranda warnings was not required.
 {¶ 17} For the foregoing reasons, plaintiff's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with this opinion.
Judgment reversed and remanded.
Petree and French, J.J., concur.
[1] There is a discrepancy in defendant's testimony regarding this fact. The defendant first testified that Lambert "asked" him to sit down (Tr. 43), and then he later testified that Lambert "told" him to sit down. (Tr. 45.)