{¶ 1} Defendant-appellant, Frank Kessler, appeals the decision of the Fayette County Court of Common Pleas denying his motion to suppress. We affirm the trial court's decision.
 {¶ 2} On September 28, 2004, Fayette County Children Services ("Children Services") received a complaint that appellant's six-year-old daughter was acting out in a sexually inappropriate manner at school. In response, Erica Haithcock, an inspector from *Page 2 
Children Services, went to the school to interview the daughter. Haithcock provided the daughter with drawings of a female child and an adult male. Appellant's daughter described to Haithcock using the pictures that appellant had placed his finger in her vagina, touched his penis to her mouth, touched his penis to her vagina, and engaged in sexual intercourse with her. As a result, appellant and his wife signed a parental agreement that day granting the agency temporary custody of their children until an investigation was completed. Thereafter, appellant contacted Children Services Investigator Dustin Ruth to set up an interview to inquire into the sexual abuse allegations. On October 15, appellant went to the Children Services offices to be interviewed by Ruth. During the interview, appellant made incriminating statements regarding the sexual abuse allegations. Ruth then requested that appellant provide a written statement.
 {¶ 3 } In the statement, appellant wrote: "I got home on Sunday or Monday morning around 3 or 4 am. [Daughter] was in the room with Ellen her mom and she had no close on her so I put a shirt on her and put her in her room. Then Ellen and I had sex. When we got dun I never put my close back on. Then [daughter] came back in the room and she grabed my hand and put my finger in her bird and my privits rubed hur the rong way and touched her the rong way. But nothing happened. It must have been 7 am or 7:30 am some time is this time fram. She was hunching my side and she told Ellen her mom that we had sex. But we never ever had sex. We call her brid vagna. My privits rubed her vagna the rong way and that is when I put some close on. Back in November of 2003 we got the kids back [daughter] said that she was cold so she got in bed with us some time in the moring she hunched my leg but she had close on and I had sweet paints on. [Daughter] Ellen and I we would take showers altogether until she was abought 2." [sic]
 {¶ 4} On October 18, Ruth forwarded appellant's statement and other evidence he had gathered about the incident to Detective Doug Coe of the Fayette County Sheriff's *Page 3 
Office. On October 28, Det. Coe requested appellant and his wife come to the sheriff's office to discuss the case and they went to the sheriff's office that day for the interview. Before interviewing appellant, Det. Coe advised appellant of his Miranda rights. In a tape-recorded interview, Det. Coe questioned appellant about the statements he made to the investigator at Children Services. Following the interview, appellant was allowed to leave the sheriff's office.
 {¶ 5} Appellant was indicted for one count of rape with a specification that the victim was less than ten years of age and one count of gross sexual imposition of a victim under thirteen years of age. Appellant moved to suppress his statements made to Children Services and the sheriff's office. Following a hearing, the trial court issued an entry overruling the motion and a "Memorandum of Decision Along with Findings of Fact." As a result, appellant entered a no contest plea to one count of rape in violation of R.C. 2907.02(A) (1 )(b) and one count of gross sexual imposition in violation of R.C.2907.05(A)(4) in exchange for a recommended sentence of ten years and dismissal of the rape specification. Appellant was sentenced to seven years in prison for rape and three years in prison for gross sexual imposition with the sentences to be served consecutively and credit for 324 days served. Appellant was also found to be an aggravated sexually-oriented offender pursuant to R.C. 2950.09(A). Appellant timely appealed, raising two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING APPELLANT'S MOTION TO SUPPRESS APPELLANT'S STATEMENTS WERE MADE VOLUNTARILY." [sic]
 {¶ 8} Appellant argues in his first assignment of error that the trial court erred in overruling his motion to suppress. Specifically, appellant argues he was not advised of his Miranda rights prior to making statements to the Children Services investigator and, *Page 4 
therefore, the statements were made in violation of his Fifth Amendment right against self-incrimination.
 {¶ 9} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152, 155,2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility.State v. Curry (1994), 95 Ohio App.3d 93, 96. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, "whether as a matter of law, the facts meet the appropriate legal standard." Curry at 96.
 {¶ 10} The Fifth Amendment of the United States Constitution provides persons with a privilege against compelled self-incrimination. "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege[.]"Miranda v. Arizona (1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602. The suspect must be advised prior to any questioning that he has the right to remain silent; that anything he says can be used against him in a court of law; that he has the right to the presence of an attorney; and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. Id. at 479.
 {¶ 11} The police are not required to issue Miranda warnings to everyone they question; rather they must issue such warnings only when they subject a suspect to "custodial interrogation." Id. See, also,State v. Biros, 78 Ohio St.3d 426, 440, 1997-Ohio-204. "Custodial interrogation" is defined as questioning initiated by a law enforcement officer *Page 5 
after a person has been taken into custody "or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. The determination of whether or not a custodial interrogation has occurred requires an inquiry into how a reasonable person in the suspect's position would have understood his situation; the ultimate question is whether there was a formal arrest of the suspect or restraint on the suspect's freedom of movement to a degree associated with a formal arrest. Biros at 440. In Oregon v. Mathiason (1977), 429 U.S. 492,97 S.Ct. 711, the United States Supreme Court held that a defendant was not in custody if he voluntarily appeared for questioning and was free to leave afterward. The court determined that only a formal arrest or an equivalent restraint of his freedom of movement would invokeMiranda procedures. Id. at 495. See, also, California v. Beheler (1983),463 U.S. 1121, 103 S.Ct. 3517; and State v. Maurer (1984),15 Ohio St.3d 24.
 {¶ 12} Appellant first argues that the questioning by Inspector Ruth and request for a written statement constituted custodial interrogation. Appellant cites the fact that investigators told appellant that Children Services is required to keep temporary custody due to the sexual abuse allegations of his child until appellant and his wife were interviewed and the investigation into the allegations was complete. Appellant claims this "threat of continued custody" motivated appellant's willingness to be questioned and demonstrates that appellant's statements were not voluntary.
 {¶ 13} Applying the objective, reasonable person standard to the case at bar we agree with the trial court's finding that appellant was not subjected to custodial interrogation by Inspector Ruth. On September 28, appellant was instructed that Children Services must keep temporary custody of his daughter until the investigation was complete. The purpose of this statement was to inform appellant of the procedure that Children Services is required to follow once it learns of an allegation of sexual abuse. Appellant contacted Ruth on his own initiative to set up the interview and voluntarily went to the Children Services office. The *Page 6 
interview occurred on October 15, 2004, more than two weeks after appellant was instructed about the precautionary measures.
 {¶ 14} There is no evidence that Ruth ever used a "threat of continued custody" to elicit responses from appellant during the interview. In fact, Ruth informed appellant before the interview that he was not required to give a statement and that he was free to leave at any time. Ruth testified, "I told him that you know his cooperation was strictly voluntary and he agreed to that. Just told him that I needed to get to the bottom of the facts of the allegations, whether they were true or not * * * did ask him after he interviewed with me to write me out a statement concerning the interview and what he told me. I told him that was voluntary if he wanted to do that but that I would appreciate it if he did, because it helps me to keep straight in his own words what he said."
 {¶ 15} Additionally, no law enforcement officers were present at the Children Services office and appellant was never placed under arrest before, during, or after the interview. No restraints were ever placed on appellant's freedom of movement to the degree associated with a formal arrest. Ruth simply interviewed appellant about the allegations and then asked appellant to put his statement in writing; which appellant voluntarily did, writing the entire statement himself. Further, appellant was not arrested and was allowed to leave the Children Services office at the conclusion of the interview.
 {¶ 16} The temporary change in custody may have been a motivating factor for appellant to contact Ruth and participate in the interview as soon as possible, but it does not elevate the interview with Ruth into a custodial interrogation. The trial court found that appellant was not under arrest during the interview with Ruth and his written and oral statements were voluntarily made.
 {¶ 17} Appellant further asserts that Inspector Ruth acted as an agent of law enforcement by questioning appellant, having him provide a written statement, and *Page 7 
forwarding the statement and findings to the sheriff's office.
 {¶ 18} It is fundamental that law enforcement officers who initiate questioning in a custodial setting must advise a suspect of theMiranda warnings. However, the Miranda requirement applies only to law enforcement officers or their agents. State v. Evans (2001),144 Ohio App.3d 539, 553, citing State v. Ferrette (1985), 18 Ohio St.3d 106. Individuals not involved in law enforcement who speak to suspects are not required to advise those suspects of their Miranda rights. Id., citing State v. Watson (1971), 28 Ohio St.2d 15, 26.
 {¶ 19} Children Services agencies have a statutory duty to investigate any complaint concerning alleged child abuse. R.C. 5153.16(A). Pursuant to the agency's procedures, Children Services investigators are required to attempt to interview alleged perpetrators in child abuse cases. Id. In addition, employees of Children Services are required to report all known or suspected child abuse to law enforcement. Id. Ohio courts have consistently held that Children Services case workers are not considered law enforcement officers and thus have no duty to advise suspects of their Miranda rights. State v. Jones, Cuyahoga App. No. 83481,2004-Ohio-5205, ¶ 41; State v. Thoman (Mar. 3, 2005), Franklin App. No. 04AP-787, 2005-Ohio-898, ¶ 10; State v. Whitehouse (June 26, 2006), Summit App. No. 17434; and State v. Simpson (Feb. 21, 1992), Ross App. No. 1706.
 {¶ 20} The complaint in this case was reported directly to Children Services by an employee at the victim's school. Following the initial interview with the victim by Erica Haithcock, Ruth was assigned to investigate the complaint. Ruth was employed as an investigator for Children Services. As an investigator, Ruth had a duty to conduct interviews and gather evidence regarding the alleged sexual abuse. Appellant contacted Ruth to schedule the interview and Ruth conducted the investigatory interview pursuant to the agency's procedures. Ruth had a legal duty to report all evidence of child abuse to law enforcement. Ruth testified that no law enforcement was involved during his investigation. In *Page 8 
fact, law enforcement did not become involved in the case until Ruth forwarded his findings to the Fayette County Sheriff's Office.
 {¶ 21} The trial court rejected appellant's contention that Ruth acted as an agent for law enforcement and improperly questioned appellant without issuing Miranda warnings. The evidence showed Ruth was performing his duties as a social services inspector for Children Services. Ruth did not act at the direction of the sheriff's office. Further, appellant complied with the investigation by going to the Children Services office and answering Ruth's questions. Ruth was not an agent of law enforcement and thus had no duty to advise appellant of hisMiranda rights. Therefore, we hold that the trial court did not err by overruling appellant's motion to suppress the oral and written statements made to Ruth.
 {¶ 22} Appellant's first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANT'S SUBSEQUENT POST-MIRANDA WARNING STATEMENTS WERE NOT VOLUNTARILY MADE."
 {¶ 25} Appellant argues in his second assignment of error that thepost-Miranda statements made to Detective Coe were not voluntarily made. Appellant argues that the only purpose for Det. Coe to interview appellant was to confirm the pre-Miranda statements in apost-Miranda interview. Appellant claims this case falls under the "question-first" line of cases, Missouri v. Seibert (2004),542 U.S. 600, 124 S.Ct. 2601, and State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255, because appellant made a pre-Miranda statement to the Children Services inspector and Det. Coe "merely recited" that statement in a post-Miranda interview.
 {¶ 26} In Seibert, the defendant was taken to the police station for questioning about a fire that had occurred at her home and resulted in the death of one of the residents. *Page 9 542 U.S. at 604. The police officer first questioned Seibert about the incident without providing her Miranda warnings. Id. Seibert thereafter made several incriminating statements. Id. at 605. The officer immediately turned on a tape recorder, issued Seibert Miranda warnings, and confronted her about the prewarning statements. Id. Seibert proceeded to confirm her earlier statements. Id. The United States Supreme Court held that this technique of successive interrogations, first unwarned, then warned, violates a defendant's Fifth Amendment Right against self-incrimination. Id. "The object of question-first is to render Miranda warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." Id. at 611. Under such circumstances, the Supreme Court ruled that both sets of statements are inadmissible because "the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning." Id. at 612.
 {¶ 27} In Farris, the defendant was pulled over by a highway patrol trooper for speeding. 2006-Ohio-3255 at ¶ 1. When Farris opened his window, the trooper smelled burnt marijuana coming from inside the car. Id. The trooper asked Farris to step out of the vehicle, conducted a pat-down, and placed Farris into his police cruiser. Id. While seated in the cruiser, the trooper asked Farris about the odor. Id. at ¶ 3. Farris made several incriminating statements including telling the trooper that a marijuana pipe was in the trunk. Id. The trooper then administeredMiranda warnings to Farris, but did not tell him that the previous admissions could not be used against him. Id. at ¶ 4. He then asked Farris the same questions and obtained the same responses regarding the location of the drug paraphernalia. Id. The Ohio Supreme Court held that both statements obtained from Farris and the physical evidence that resulted were inadmissible because the use of question-first would render Miranda warnings ineffective. Id. at ¶ 49 and ¶ 52. The court stated, "We believe that to hold otherwise would encourage law-enforcement officers to withhold Miranda *Page 10 
warnings and would thus weaken Section 10, Article I of the Ohio Constitution." Id. at ¶ 49.
 {¶ 28} Appellant's reliance on Seibert and Farris is misplaced. In those cases, both the pre-Miranda and post-Miranda questioning was conducted by law enforcement officers. In Seibert and Farris,Miranda warnings should have been given at the outset of the interviews. As the trial court correctly found, Inspector Ruth was neither a law enforcement officer nor an agent of law enforcement. Further, Ruth was not required to provide appellant with Miranda warnings prior to conducting the interview.
 {¶ 29} Additionally, in the "question-first" cases, the separate pre-and post-Miranda interviews took place within a very short time span, within minutes of each other. Basically in those cases, the officers asked questions, elicited incriminating responses, and immediately issued Miranda warnings to confirm the answers. On the other hand, in this case the interviews were conducted weeks apart from each other by two different individuals; one of whom was not a law enforcement officer. There is nothing in this case to indicate that law enforcement was trying to subvert appellant's Miranda rights because law enforcement was not even involved in appellant's initial interview and appellant was provided his Miranda warnings at the outset of law enforcement's first interview with him.
 {¶ 30} In examining the interview conducted by Det. Coe, the trial court concluded appellant's statement to Det. Coe was voluntary. Similar to the interview with Inspector Ruth, appellant went to the Fayette County Sheriff's Office on his own volition. There was no evidence of any coercive conduct on the part of Det. Coe. The detective clearly read appellant his Miranda rights at the beginning of the interview; the interview lasted only 20 minutes; no threats or inducements were made toward appellant; and appellant was allowed to leave at the conclusion of the interview. As a result, we conclude the trial court did not err by overruling appellant's motion to suppress.
 {¶ 31} Appellant's second assignment of error is overruled. *Page 11 
 {¶ 32} Judgment affirmed.
 YOUNG and BRESSLER, JJ., concur. *Page 1