[Cite as *State v. Montague*, 2012-Ohio-4285.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97958

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALICIA MONTAGUE

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548500

**BEFORE:**   Stewart, J., Blackmon, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**   September 20, 2012

**ATTORNEY FOR APPELLANT**

Patrick E. Talty
20325 Center Ridge Road, Suite 512
Rocky River, OH   44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   John P. Colan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH   44113

MELODY J. STEWART, J.:

{¶1} Defendant-appellant Alicia Montague was found guilty of one count of obstruction of justice for hindering a police investigation of her husband after her daughter alleged that she had been raped by him. Her sole complaint in this appeal is that the court erred by refusing to suppress evidence of statements she made during a police interview because she was in police custody but was not given her rights as required by *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶2} Testimony offered during the suppression hearing showed that the grandparents of Montague's daughter went to the police station to report that they had received a text message from the daughter claiming that Montague's husband had raped her. The police responded to Montague's house and spoke to Montague and the daughter. Montague and the daughter told the police that it was a "misunderstanding" and that the daughter made up the rape allegation because her father would not allow her to go to a friend's house. The police left without arresting the father. The grandmother, who was also present at Montague's house, told the police that she would take her granddaughter home with her. The following day, the police contacted the grandparents. The grandparents brought their granddaughter to the police station and she told the police that her father had digitally raped her. The father was arrested that same day.

{¶3} The following day, a patrolling police officer received a broadcast saying that Montague was walking with her son and "needed a ride." When Montague saw the police cruiser, she waved at the cruiser and asked for a ride to the police station so she could see the husband. The officer radioed this request to his dispatcher but was ordered to take Montague back to her house. Montague and the officer were met at the house by a police detective. While at the house, the police collected evidence and took photographs. When the search concluded, Montague was brought to the police station.

{¶4} Montague was taken to a conference room and interviewed by the detective and a social worker. The interview was videotaped and offered into evidence at the suppression hearing. Montague was not physically restrained in any way and, in fact, had been provided lunch by the police. The detective conducting the interview told her that she was not a suspect and that "I'm not looking to get you into trouble." He asked her to "lay out" what happened with the daughter and "be truthful * * * don't cover for anybody." He told her that her husband was in trouble regardless of what she said and that it was unlikely that the husband would be released from custody no matter what she said about him.

{¶5} During her interview with the police, Montague admitted that the daughter said that she had been raped by the father. Montague gave conflicting statements on whether she believed the daughter's story: she initially said she believed the daughter; but then admitted that she found the rape allegation suspicious because the daughter had been known to fabricate stories and the daughter's interaction with the father shortly after

the incident was so friendly that it seemed to belie her allegations. Because of these misgivings, Montague told the daughter to tell the police that the rape story had been a lie. She thought that doing so would buy her time to "figure everything out."

{¶6} Montague testified at the suppression hearing and said that she did not call the police to ask for a ride to the police station. She said that the police picked her up as she was walking to the police station and took her back to her house. It was only after they finished searching the house that she asked to be taken to the police station to see her husband. She was separated from her son and placed in a conference room. Although her purpose in going to the police station was to get information relating to her husband, she said that the police started asking questions and that she did not know that she could leave. She stated, "I thought when an officer asks you a question, you're supposed to answer it."

{¶7} The court found that there was no custodial interrogation because Montague voluntarily went to the police station, was not handcuffed, and indicated that she wanted to talk to the police. Although Montague said that she did not feel free to end the questioning, the court found that she had been told that she was not a suspect and at no point believed that she had been under arrest.

{¶8} In order for *Miranda's* safeguards to apply, a suspect must be in "custody" and subject to "interrogation." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 24. Whether a suspect is in custody turns on whether there is a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal

arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 77 L.Ed.2d 1275, 103 S.Ct. 3517 (1983) (per curiam), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L.Ed.2d 714, 97 S.Ct. 711 (1977) (per curiam). This inquiry requires a court to examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position. *Berkemer v. McCarty*, 468 U.S. 420, 442, 82 L.Ed.2d 317, 104 S.Ct. 3138 (1984).

{¶9} The location of the interrogation is not dispositive in determining whether a person is in custody. When the interrogation occurs at a police station, we consider whether the person being interrogated voluntarily went to the police station. Even though a police station can be a coercive environment, such questioning does not amount to custodial interrogation where the suspect is told that she is not under arrest and is free to leave. *See, e.g., Beheler*, 463 U.S. at 1125 (*Miranda* warnings not required when defendant, not parolee or arrestee, voluntarily accompanied police to station, talked to police for 30 minutes, and was permitted to leave); *Oregon v. Mathiason*, *supra* (*Miranda* warnings not required when parolee voluntarily submitted to questioning at police station despite being questioned by officer in room with a closed door).

{¶10} Montague testified that she asked the police to drive her to the police station, so she went there voluntarily. She was placed in a conference room, not a holding cell or some other room that would indicate she was being confined under police authority. Although the police did not tell Montague that she was free to leave, she was immediately told that she was not a suspect and that the police were not questioning her "to get you into trouble." Nothing in these facts objectively show that Montague's

freedom of movement had been restrained to the point where she was in "custody" such that the police were required to advise her of her *Miranda* rights. *United States v. Galceran*, 301 F.3d 927, 930-931 (8th Cir.2002) (*Miranda* warnings not required because defendant voluntarily went to police station upon request and was not interviewed in holding cell area); *United States v. Norris*, 428 F.3d 907, 912 (9th Cir.2005) (*Miranda* warnings not required because defendant voluntarily accompanied officers to police substation); *Peoples v. Campbell*, 377 F.3d 1208, 1228 (11th Cir.2004) (*Miranda* warnings not required because defendant voluntarily accompanied officer to police station); *State v. Luke*, 3d Dist. No. 1-06-103, 2007-Ohio-5906 (*Miranda* warnings not required because defendant voluntarily went with police to police station, was never physically restrained in any manner, was allowed to make telephone calls during an interview, and was informed that he would be taken home following the interview).

**{¶11}** In some cases, "police over-reaching" may demonstrate the involuntariness of an interrogation. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). For example, coercive tactics like physical abuse, threats, deprivation of food, medical treatment, or sleep, when viewed under the totality of the circumstances, may turn a voluntary submission to questioning into a custodial interrogation. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).

**{¶12}** No voices were raised during Montague's interview — it was conducted at all times in a quiet and a respectful manner. Nor was Montague denied any food or drink or subjected to any other deprivation, either physical or mental. In fact, when the police

learned that she and her son had not eaten, they provided them with lunch. And when Montague claimed to be suffering a panic attack, the police arranged to have her transported to the hospital for treatment. There is no evidence of any coercion that turned Montague's voluntary agreement to be questioned into a custodial interrogation.

{¶13} We therefore find no error in the court's findings of fact and conclusions of law, so we overrule the assigned error.

{¶14} Judgment affirmed

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, A.J., and
MARY J. BOYLE, J., CONCUR