[Cite as *In re R.S.*, 2014-Ohio-3543.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

IN RE:                                        CASE NO. 11-13-10

   R.S.,

ALLEGED DELINQUENT CHILD.              O P I N I O N

**Appeal from Paulding County Common Pleas Court
Juvenile Division
Trial Court No. 20122087**

**Judgment Affirmed**

**Date of Decision:   August 18, 2014**

APPEARANCES:

   *Charlyn Bohland*  for Appellant

   *Matthew A. Miller*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, R.S., appeals the judgment of the Paulding County Court of Common Pleas, Juvenile Division, overruling his motions to suppress and dismiss. On appeal, R.S. argues that Captain Weidenhamer violated his right against self-incrimination, and as a result, the trial court erred in denying his motion to suppress. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On October 17, 2012, a complaint was filed against R.S. charging him with a single count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult. The complaint arose as a result of an admission by R.S. that he had digitally penetrated C.R., an 11-year-old girl.

{¶3} On December 10, 2012, R.S. filed a motion to suppress statements made in an interview with Captain Weidenhamer and his subsequent written statement. R.S. alleged that these statements were made during a custodial interrogation and he was not advised of his *Miranda* rights. R.S. also filed a motion to dismiss the charge against him, arguing that without his incriminating statements, the crime would not have been discoverable since C.R. and her mother were allegedly not going to report the incident.

{¶4} The matter proceeded to a suppression hearing on December 28, 2012. The following facts and testimony were subsequently adduced.

{¶5} Captain Weidenhamer testified that while employed with the Paulding Police Department, she came into contact with R.S. on October 15, 2012. On that day, she was on duty as a police officer and was in uniform. Captain Weidenhamer testified that she received a phone call from Anna Campbell, a juvenile probation officer, and was asked to come to Campbell's office.

{¶6} Captain Weidenhamer testified that she, R.S., R.S.'s father, and Campbell were all in present in Campbell's office when R.S. told her what happened the previous weekend. Captain Weidenhamer stated that R.S. told her that "he was at [T.K.'s] mother's house and they were celebrating [T.K.'s] birthday. Um, they had been drinking beer, and [T.K.'s] little brother and sister * * * ended up crawling into bed with them and [R.S.] told me that he fingered [T.K.'s little sister, C.R.]." Suppression Hearing Tr., p. 6.

{¶7} At this point, Captain Weidenhamer testified that R.S. was not under arrest and that he was free to leave. Captain Weidenhamer then asked if R.S. could come to the police station for additional questioning. R.S. went to the police station with his father and reiterated the same story, but went into "a little bit more detail." *Id.* at p. 8. R.S. also provided a written statement. Captain Weidenhamer testified that she explained to R.S. and his father that he could decline to make a written statement.

{¶8} Captain Weidenhamer also testified that she spoke with T.K. and C.R.'s mother, Tammy. According to Captain Weidenhamer, Tammy never indicated that she was "definitely not going to report" the incident. *Id.* at p. 9.

{¶9} On cross-examination Captain Weidenhamer stated that she was aware that R.S. was a juvenile and was only 16-years-old. She also admitted that she never advised R.S. or his father of R.S.'s *Miranda* rights. Moreover, it was only after Captain Weidenhamer received R.S.'s statement that she contacted Tammy; Tammy never contacted her. Although Tammy told Captain Weidenhamer that she wanted to call the police to report what had happened, she did not want everyone to know what happened to C.R. or get R.S. in trouble. Tammy admitted to Captain Weidenhamer that she served R.S. and T.K. alcoholic beverages on the night of the incident and was afraid to get in trouble with the police. While Captain Weidenhamer believed that R.S. committed a crime after speaking with him in Campbell's office, she did not believe that he needed to be in custody for committing that crime.

{¶10} On December 28, 2012, the trial court overruled R.S.'s motion to suppress and motion to dismiss.

{¶11} A bench trial was held in this matter on January 2, 2013, and the juvenile court found R.S. to be a delinquent child on one count of rape. The trial court imposed a 12-month minimum commitment to the Ohio Department of

Youth Services ("DYS"), but suspended the commitment on the condition that R.S. successfully complete the treatment program at Juvenile Residential Center of Northwest Ohio ("JRC").[1]  The trial court filed a judgment entry reflecting its verdict and disposition on January 4, 2013.

**{¶12}** R.S. filed this timely appeal, presenting the following assignment of error for our review.[2]

### *Assignment of Error*

**THE JUVENILE COURT ERRED WHEN IT OVERRULED R.S.'S MOTION TO SUPPRESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.**

**{¶13}** In his sole assignment of error, R.S. contends that the trial court erred in denying his motion to suppress.  Specifically, R.S. argues that the trial court should have found he was in custody and suppressed all statements made to Captain Weidenhamer.  We disagree.

---

[1] On July 11, 2013, JRC unsuccessfully discharged R.S. and the trial court invoked his suspended commitment to DYS.  (Docket No. 39, p. 2).

[2] We note that R.S. did not file his notice of appeal until November 4, 2013.  However, the trial court's January 2013 judgment entry was not served to R.S. or his attorney in accordance with Civ.R. 58(B), which mandates that "the clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket.  Upon serving the notice and notation of the service in the appearance docket, the service is complete."  In this matter, there is no notation in the docket that any of the parties were served and no indication of the date when service was completed upon the parties.  Accordingly, "the time for filing a notice of appeal never began to run because the trial court failed to comply with Civ.R. 58(B)." *In re Anderson*, 92 Ohio St.3d 63, 67 (2001).

*Standard of Review*

{¶14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982); *see also In re T.W.*, 3d Dist. Marion No. 9-10-63, 2012-Ohio-2361, ¶ 20. The appellate court must then review the application of the law to the facts de novo. *Roberts* at ¶ 100, citing *Burnside* at ¶ 8.

Miranda *Standard*

{¶15} The Fifth Amendment to the United States Constitution provides individuals with protection against self-incrimination. *See Chavez v. Martinez,* 538 U.S. 760, 765, 123 S.Ct. 1994 (2003). " 'Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to *Miranda* warnings where applicable.' " *In re K.W.*, 3d Dist. Marion No. 9-08-57, 2009-Ohio-3152, ¶ 12, quoting *State v. Thompson*, 7th Dist. Jefferson Nos. 98

JE 28, 98 JE 29, 2001 WL 69197, *8 (Jan. 24, 2001), citing *In re Gault,* 387 U.S. 1, 55, 87 S.Ct. 1428 (1967).

{¶16} "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602 (1966). "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Police are not required to administer *Miranda* warnings to every person they question. *State v. Biros,* 78 Ohio St.3d 426, 440 (1997), citing *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711 (1977). Rather, police officers are only required to administer *Miranda* warnings where the individual questioned is subject to "custodial interrogation." *Biros* at 440, citing *Mathiason* at 494.

{¶17} "In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave." *State v. Hoffner,* 102 Ohio St.3d 358, 362, 2004–Ohio–3430, ¶ 27, citing *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct.

457 (1995). The first inquiry is distinctly factual. *Keohane* at 112. "Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve 'the ultimate inquiry' of whether there was a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Hofner* at ¶ 27, citing *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517 (1983), quoting *Mathiason* at 495. The subjective views harbored by either the interrogating officers or the person being questioned are of no consequence in the *Miranda* analysis. *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526 (1994). In resolving "the ultimate inquiry" courts must consider the totality of the circumstances surrounding the questioning. *State v. Gumm,* 73 Ohio St.3d 413, 429 (1995); *Beheler* at 1125. "Relevant factors to consider in determining whether a custodial interrogation took place are: (1) the location of the questioning; (2) duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints; and (5) whether the interviewee was released at the end of the interview." *State v. Billenstein*, 3d Dist. Mercer No. 10-13-10, 2014-Ohio-255, ¶ 44, citing *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012).

{¶18} Recently, the United States Supreme Court held that a juvenile's age may be considered in the *Miranda* analysis, so long as the juvenile's age was known to the officer at the time of questioning or would have been objectively

apparent to a reasonable officer. *J.D.B. v. North Carolina,* —— U.S. ——, 131 S.Ct. 2394 (2011). The Supreme Court recognized that in the specific context of police questioning, events that "would leave a man cold and unimpressed can overawe and overwhelm a" teen. *Id.* at 2397, quoting *Haley v. Ohio,* 332 U.S. 596, 599, 68 S.Ct. 302 (1948). While a juvenile's age may be considered in the *Miranda* custody analysis, the Supreme Court cautioned that "this does not mean that a child's age will be a determinative, or even a significant, factor in every case * * *." *J.D.B.* at syllabus.

### *Reconstruction of Facts*

{¶19} The facts of this case are relatively undisputed. On Monday morning, R.S. and his father went to R.S.'s probation officer to make a report regarding an incident that had happened over the weekend. Campbell, the probation officer, then asked Captain Weidenhamer to come to her office so she could talk with R.S. Captain Weidenhamer, who was dressed in uniform, testified that she knew that R.S. was 16-years-old at the time of questioning. R.S., his father, Campbell, and Captain Weidenhamer were all in the probation office when the interview took place. After R.S. disclosed what he had done, Captain Weidenhamer asked R.S. and his father to come to the police station so she could speak further with R.S. At this point, R.S. was not under arrest.

{¶20} R.S. and his father then went to the police station, where Captain Weidenhamer questioned R.S. again, in the presence of his father. R.S. also provided Captain Weidenhamer a written statement. Before writing out a statement, Captain Weidenhamer explained to R.S. and his father that he did not have to fill out the statement. After making his written statement, Captain Weidenhamer did not place R.S. under arrest, and he left the station with his father.

*Totality of the Circumstances*

{¶21} Upon considering all of the facts surrounding R.S.'s interview, we find that a reasonable juvenile in R.S.'s position would have felt free to terminate the interview and leave.

{¶22} On appeal, R.S. argues that that he was in custody because he was "ordered" by Campbell to disclose to Captain Weidenhamer what had happened and that he was surrounded by three authority figures during his interview. We find no evidence in the record to support R.S.'s contention that he was "ordered" by Campbell to "confess what he did." Appellant's Br., p. 10. Captain Weidenhamer testified that upon arriving at Campbell's office, "Campbell had told me that [R.S.] was one of her probationers and that [he] had been doing some drinking over the weekend and something had happened, and she *asked* [R.S.] to tell me what happened." (Emphasis added.) Suppression Hearing Tr., p. 6. Thus,

the only evidence presented at the suppression hearing was that Campbell *asked* R.S. to tell Captain Weidenhamer what had happened over the weekend. R.S. chose not to challenge this evidence when he cross-examined Captain Weidenhamer, or when given the opportunity to present his own evidence.[3]

{¶23} We also do not find the fact that R.S. was surrounded by three adults in Campbell's office indicative of a custodial interrogation, especially since one of the adults was R.S's father. Further, R.S. was familiar with Campbell, as she was his probation officer. *See In re Bucy*, 9th Dist. Wayne No. 96CA0019, 1996 WL 640039, *2 (finding no custodial interrogation when juvenile was familiar with the interviewing officer); *see also In re Johnson*, 5th Dist. Morgan No. CA-95-13, 1996 WL 363811, *1 (juvenile not in custody when talking to his probation officer even though a deputy was present).

{¶24} However, there are some facts that tend to weigh in favor of a finding that R.S. was in custody. Although Captain Weidenhamer stated R.S. and his father were free to leave at any time during the interviews, she did not convey this to either R.S. or his father. *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140 (2004). Captain Weidenhamer was also in uniform when the interview took place. *T.W.* at ¶ 29. Further, while the record is silent as to how long each interview was, R.S. was subject to essentially three interviews: one with Campbell

---

[3] During the suppression hearing, no evidence was presented concerning what transpired during the initial interaction between R.S. and his probation officer. Further, Campbell never testified at the suppression hearing or at trial.

at her probation office; another with Captain Weidenhamer in Campbell's office; and a third interview at the police department. *See K.W.*, 2009-Ohio-3152, ¶ 12.

{¶25} Nevertheless, these circumstances are offset by other facts that tend to weigh against a finding that R.S. was in custody. Most important, R.S. and his father voluntarily showed up at Campbell's probation office. *Compare In re C.M.*, 8th Dist. Cuyahoga No. 99599, 2013-Ohio-5426, ¶ 43 ("We are not persuaded by C.M.'s contention that his appearance at the police station was involuntary because his mother was with him, that is, his mother made him go.") *with In re T.W.*, 2012-Ohio-2361, ¶ 29 (finding custodial interrogation when mother brought T.W. to children services at intake investigator's request "limiting the extent of [T.W.'s] control over his being there, and rendering his presence ostensibly involuntary"); *see also In re J.S.*, 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, ¶ 14 (finding juvenile in custody when father was instructed to follow them to the police station so his son could be questioned). The situation here is distinguishable from that of *T.W.* and *J.S.*, where the parents "were directed by authorities to have their children submit to interviews." *C.M.* at ¶ 43.

{¶26} Further distinguishable from *T.W.*, R.S. was never separated from his father during either interview. There is also no evidence on the record that Captain Weidenhamer carried a gun to the interviews and if so, whether it was visible to R.S. *T.W.* at ¶ 29; *In re R.H.*, 2d Dist. Montgomery No. 22352, 2008-

Ohio-773, ¶ 20. Moreover, there was no testimony as to whether Campbell or Weidenhamer blocked the door, preventing R.S. from exiting the interview. *T.W.* at ¶ 29. Unlike the juvenile in *K.W.*, who was 10-years-old and had no criminal history, R.S. was 16-years-old and had previous experience in the criminal justice system. R.S. and his father were allowed to leave after the interviews concluded. *Billenstein*, 2014-Ohio-255, ¶ 44. Lastly, R.S. was not transported to the interview by a police officer. *See Yarborough*, 541 U.S. at 664; *T.W.* at ¶ 30.

{¶27} Upon balancing the forgoing facts, we find that the trial court did not err in denying R.S.'s motion to suppress. Under the circumstances of the instant case we agree with the trial court, that a reasonable 16-year-old in R.S.'s position would have felt free to terminate the interview and leave the premises. Since R.S. was not in custody, he did not need to be administered his *Miranda* warnings, and the State was free to use statements made during R.S.'s interview and his written statements at trial. Consequently, we need not address R.S.'s argument concerning the trial court's denial of his motion to dismiss. App.R. 12(A)(2)(c).

{¶28} Accordingly, we overrule R.S.'s sole assignment of error.

{¶29} Having found no error prejudicial to R.S. in the particulars assigned and argued, we affirm the trial court's judgment.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**